IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CANDLEWOOD PARTNERS LLC, | ) | No. 04 C 8000 |
| Appellant, | ) | HONORABLE DAVID H. COAR |
| v. | ) | |
| HEDSTROM CORPORATION and | ) | |
| VICTORY LANE OIL, INC., | ) | |
| Appellees, | ) | |
| In Re: | ) | Chapter 11 Proceeding |
| | ) | Bankruptcy Case No. 04 B 38543 |
| REPURCHASE CORPORATION, | ) | Appeal From the Honorable |
| Debtor. | ) | Judge Jack B. Schmetterer |

**MEMORANDUM OPINION AND ORDER**

This matter comes before this Court on Appellant Candlewood Partners LLC's ("Candlewood") appeal from the United States Bankruptcy Court, where final orders were entered overruling an objection filed by Candlewood and granting a motion by the Appellee Debtor, Hedstrom Corporation (the "Debtor") authorizing the Debtor to sell certain assets. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a). Also before the Court is Appellee's Motion to Dismiss the Appeal.

**I.    FACTS**

*Prepetition Facts asserted by Candlewood*

Candlewood had been in negotiations to purchase certain assets of the Debtor. Those assets included the Debtor's Ball, Bounce and Sports Division ("BBS Division"). In preparation of the purchase, Candlewood expended $85,000 in performing due diligence, financial analyses and negotiations. Candlewood reached an agreement with a potential investor, James Purtell, in

-1-

which both parties agreed to keep the terms of their agreement confidential. On or about October 7, 2004, Purtell introduced Victory Lane Oil, Inc. ("Victory") to Candlewood as a potential investor, but that relationship never materialized. On or about October 14, 2004, Victory contacted the Debtor's marketing and sale advisors, Barrier Advisers, about purchasing the Debtor's BBS Division.

*Bankruptcy Proceedings*

On October 18, 2004, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. On that same date, Debtor filed an Emergency Motion to Authorize Sale of Certain Assets Outside the Ordinary Course of Business, Approve Sale Terms and Procedures, and Approve Procedures for the Designation, Assumption and Assignment of Executory Contracts. In the motion, the Debtor sought to sell its BBS Division to Victory, subject to higher and better offers forthcoming at public auction. On that same date, Candlewood appeared telephonically before the Bankruptcy Court and alleged that Victory had engaged in tortious conduct by usurping Candlewood information and intellectual property in arriving at its bid.

On October 28, 2004, Candlewood filed a written objection to the motion stating that it filed an action in Ohio state court against Victory alleging in effect that Victory had tortiously obtained and utilized Candlewood's information in connection with the proposed sale of the BBS Division and had tortiously interfered with Candlewood's contractual and business relations. On October 29, 2004, a good faith hearing was conducted before the Bankruptcy Court. Counsel for the Debtor objected to Candlewood's objection and participation in the

hearing, but the Bankruptcy Court determined that Candlewood had standing to object and participate in the good faith hearing on the basis of the nature of its objection.

The Court gave Candlewood opportunities to present witness testimony and to explain how Victory's bid made use of Candlewood's confidential and proprietary work, but Candlewood was unable to do either. The Court took testimony from Harry Gray of Barrier Advisors, which advised the Debtor on the marketing and selling of the BBS Division. Gray testified that he had personally participated in the sale process of the BBS Division. He stated he had been dealing with unsolicited offers since February 2004 and that after the Bankruptcy Court authorized the sale to proceed, his company contacted ninety-six potential buyers. Candlewood was not on a list of the ninety-six names of the potential buyers. However, Gray testified that his company had sent solicitation materials to Candlewood. Gray testified that the Victory offer was greater in value that the estimated liquidation value of the BBS Division. He also testified that no materials created by Candlewood were ever given to Victory to the best of his knowledge and that Candlewood never expressed to him or anyone at Barrier Advisors that they were interested in purchasing the BBS Division. Candlewood could not point to any concrete proprietary information contained in its form sale agreement that had been allegedly misappropriated and used by Victory in its bidding agreement. At the conclusion of the hearing, the Bankruptcy Court overruled Candlewood's objection and found the sale was not tinged with bad faith.

## II.  STANDARD OF REVIEW

On appeal in a United States district court, a bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004). A bankruptcy court's

good faith determination is a factual finding that is reviewed for clear error. *Hower v. Molding Sys. Eng'g Corp.,* 445 F.3d 935, 938 (7th Cir. 2006) (citing *In re Smith*, 286 F.3d 461, 464 (7th Cir. 2002)). In its statement of the applicable standard of review, Candlewood states this Court's review of the Bankruptcy Court's decision to hold an evidentiary hearing without giving 20 days notice is a question of law and should be reviewed *de novo*. But Candlewood has not listed the Bankruptcy Court's decision to hold an evidentiary hearing as one of the questions presented on this appeal; therefore, the Court declines to review it.

## III. ANALYSIS

Candlewood raises two issues on this appeal.[1] First, it asks whether the Bankruptcy Court erred in its finding that the Debtor's sale of certain assets to a third party was done in good faith. Second, Candlewood asks whether the Bankruptcy Court erred when it entered an order of the good faith finding pursuant to Section 363(m) of the Bankruptcy Code. The Appellees inquire whether Candlewood had standing to object to the sale, participate in the good faith hearing and file notice of appeal with respect to the orders entered in connection with the sale. Appellees contend that Candlewood does not have standing to appeal the final orders of the Bankruptcy Court. Appellees also contend that in the alternative, that the appeal is moot. Given the jurisdictional nature of Appellees' contentions, their challenges to standing and mootness will be dealt with first.

---

[1] Candlewood actually designated three issues for appeal, the third being whether the Bankruptcy Court erred in overruling its objection to the entry of a good faith finding pursuant to section 363(m) of the Bankruptcy Code, but abandoned it its Appellant's Brief. This question is encompassed within the other issues anyway.

**Standing**

Article III of the United States Constitution confers upon the federal courts jurisdiction over cases and controversies. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994). It restricts the jurisdiction of the federal courts to actual controversies in which the litigants have a personal stake. U.S. Const. Art. III § 2; *In re Fedpak Sys.*, 80 F.3d 207, 211 (7th Cir. 1996). A potential appellee seeking to appeal a final order of a bankruptcy court under 28 U.S.C. § 158 must be directly and adversely affected pecuniarily by the order, *In re Matter of DuPage Boiler Works, Inc.*, 965 F.2d 296, 297 (7th Cir. 1992), and must show that the interest the party seeks to protect through appeal is an interest protected by the Bankruptcy Code. *In re Harwald Co.*, 497 F.2d 443, 444 (7th Cir. 1974).

Appellees contend that Candlewood lacks standing to bring this appeal because it was not sufficiently aggrieved by the Bankruptcy Court's good faith finding and entry of an order memorializing such finding. The determination of standing in the context of a bankruptcy appeal usually focuses on two questions. The first question is whether the appellant was directly and adversely affected pecuniarily by the bankruptcy court's order. *In re Andreuccetti*, 975 F.2d 413, 416-417 (7th Cir. 1992). The second question is whether the interest the appellant seeks to protect via appeal is protected by the Bankruptcy Code. *Harwald*, 497 F.2d at 444. But in this case, standing *to appeal* has already been established by virtue of the fact that the Bankruptcy Court determined Candlewood had standing to object and participate in the good faith hearing on the basis of the nature of their objection. The Court noted that the good faith hearing was necessary to discover whether there was "an attempt to take grossly unfair advantage of the other bidders." (Transcript of October 29, 2004 proceedings, p. 15.) In other words the Court decided

Candlewood, as a potential bidder, had standing to challenge the proposed transaction on the basis of a lack of good faith of the purchaser.

In *Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, the Second Circuit held that an unsuccessful bidder challenging the intrinsic fairness of an asset sale will have standing to appeal an order authorizing that asset sale. 111 F.3d 269, 273 (2d Cir. 1997). In *Harwald*, the Court explained that because the Bankruptcy Act (pre-Code) sought to minimize harm to creditors, it allowed public auctions of debtor estate property to fetch the highest price through competitive bidding. 497 F.2d at 444. Thus, the *Harwald* court recognized that "courts properly entertain suits challenging the equity of a bankruptcy sale transaction, on the assumption that sales tinged by fraud, mistake or unfairness would generally result in an accepted bid below that which might have been expected in a fair, free market situation." *Id*. The Court went on to hold that "when an unsuccessful bidder attacks a bankruptcy sale on equitable grounds related to the *intrinsic structure of the sale*, he brings himself within the zone of interests which the Bankruptcy Act seeks to protect and to regulate." *Id*. (emphasis added). The same is true today under the Bankruptcy Code. In short, although this Court is concerned that Candlewood's ulterior motives in bringing this appeal may belie its standing, by challenging the good faith of the sale,[2] Candlewood secures its standing on this

---

[2] After the Bankruptcy Court overruled the Debtor's objection to Candlewood's participation in the hearing, Candlewood conceded that it *did not* object to the sale because it wanted to stop the sale or suspected the Debtor had done anything wrong or that it suspected Victory and the Debtor engaged in bad faith, but rather that it wanted to protect the viability of a separate case filed against Victory in Ohio for separate claims including causes of action such as tortious interference of contract and tortious interference of a business relationship. (Transcript of October 29, 2004 proceedings, pp. 37-38.) Candlewood was obviously primarily concerned about possible *res judicata* effects of a good faith finding in the Bankruptcy Court on its Ohio state lawsuit against Victory and Purtell.

appeal. *See In re Schultz Mfg. & Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992) ("Prerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding").

**Mootness**

In the absence of a stay pending appeal, the good faith sale of a debtor's assets is final and a reviewing court has no power to alter such a sale. *Hower,* 445 F.3d at 938. That is so because section 363(m) of the Bankruptcy Code provides that absent a stay of sale, appeals of orders authorizing asset sales do not affect the validity of sales to entities that purchased the assets in good faith. *Id*. Thus, bankruptcy appeals to district courts seeking to alter 363(m) sales orders are statutorily moot if the appellant did not move for a stay pending appeal under Bankruptcy Rule 8005. However, this appeal does not seek to alter the sale of the BBS Division. Instead, it seeks to alter the good faith finding within the order. Appellees claim that this appeal is then moot on the basis that Candlewood does not challenge the Bankruptcy Court's entire judgment, but merely challenges that Court's good faith finding. However, the cases upon which Appellees rely, *United States v. Accra Pac, Inc.* and *Tcherepin v. Franz*, explain that an appellant's attempted challenge to mere findings within a judgment but not the entire judgment fails to satisfy standing requirements not because the underlying issue was moot, but because in those cases there was no real adversity suffered by the appellant by virtue of the judgment. 173 F.3d 630, 632 (7th Cir. 1999); 485 F.2d 1251, 1268 (7th Cir. 1973). In *Accra Pac, Inc.* and *Tcherepin*, both appellants had actually prevailed in the contested orders, then sought to alter superfluous provisions of the orders on appeal. 173 F.3d 630; 485 F.2d 1251. Mootness deals with the situations where "the dispute between the parties no longer rages, or when one of the

parties loses his personal interest in the outcome of the suit" so as to prevent courts from issuing advisory opinions. *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir. 1994). There has been no showing that Candlewood lost its personal interest in Victory being declared a bad faith purchaser. The Court doubts that Candlewood would pursue this appeal and expend its resources if it did not suffer real and cognizable adversity from the Bankruptcy Court's ruling. For those reasons, this Court is satisfied that this matter is not moot.

**Merits of the Appeal**

Candlewood asserts that the Bankruptcy Court erred in finding the sale was in good faith and abused its discretion in entering its good faith finding because Candlewood was not given a "meaningful opportunity" to present evidence at the good faith hearing. According to Candlewood, the Bankruptcy Court did not comply with Bankruptcy Rule 2002 in giving Candlewood and other bidders proper notice of the good faith hearing. Therefore, its failure to produce evidence at the hearing should be excused and requires a remand for a more full hearing. Candlewood's reliance on Bankruptcy Rule 2002 as support for its argument that the good faith hearing was not a meaningful opportunity to present its evidence is misplaced because that rule only lists creditors, indenture trustees, trustees and debtors as the parties to whom 20 day notice must be made; not would-be bidders to a Sec. 363 sale or other non-parties to the bankruptcy. Moreover, Candlewood has not shown how any of the listed parties of Rule 2002 were potentially prejudiced from the Bankruptcy Court's notice procedure.

In short, Candlewood has no one to blame but itself for its inability to provide evidence of Victory's purported unfair advantage at the good faith hearing. The Bankruptcy Court made a straightforward request to Candlewood's counsel to demonstrate how Victory's bidding

agreement misappropriated Candlewood's confidential and proprietary information found in its own agreement and counsel could not do so. When Candlewood's counsel appeared telephonically before the Bankruptcy Court on October 18, 2008, it had sufficient information before it to support its claims that Victory had engaged in tortious conduct by usurping Candlewood information and intellectual property in arriving at its bid. Yet Candlewood would have this Court conclude that it was legitimately unable to gather that information together and present to the Bankruptcy Court eleven days later. Candlewood's position is without merit.

Candlewood also asserts that the Bankruptcy Court's finding was made in clear error based upon the evidence that *was before* the Court during the hearing. It states that the two asset purchase agreements that were introduced at the hearing prove its confidentiality agreement with Purtell was breached, the first being Victory's agreement and the second belonging to Candlewood. Candlewood ignores the fact that it could not direct the Court to any confidential and proprietary information contained in its agreement that was used by Victory in its agreement. Candlewood's failure to do so is not attributable to any actions of the Bankruptcy Court. In the absence of evidence of unfair advantage presented to the Bankruptcy Court, Candlewood's appeal on whether the Bankruptcy Court erred in making its good faith finding is non-meritorious on the merits.

**IV. CONCLUSION**

For the reasons stated above, this Court DENIES Appellee's Motion to Dismiss Appeal and HOLDS that the Bankruptcy Court 1) did not clearly err when it found the Debtor's sale of certain assets to a third party was in good faith and 2) did not err or abuse its discretion when it

entered the order of the good faith finding pursuant to Section 363(m) of the Bankruptcy Code. Therefore, this Court DENIES the instant appeal (Document [1]). All other motions are moot and hereby terminated. Civil case terminated.

                                                                     Enter:

                                                                     /s/ David H. Coar
                                                                     David H. Coar
                                                                     United States District Judge

Dated: **April 22, 2008**